## Welch v. National Union Life Insurance Co. of Pittsburgh

*John J. Regule*, for plaintiff.

*P. Raymond Bartholomew*, for defendant.

ACKER, J., January 13, 1971.—The matter for determination by this court arises from a motion for summary judgment in an action in assumpsit. The suit is upon an insurance policy issued to plaintiff by defendant. The critical dates appear to be June 1, 1967, which each party agrees is the effective date of the policy, and the date when plaintiff either received treatment or a recommendation for treatment by a legally qualified doctor of medicine or osteopathy. Defendant by an affidavit of Dr. John L. Thomas, an orthopedic surgeon of Greenville, Pa., states that date was April 14, 1967, when plaintiff first received treatment for a spinal disorder and osteoarthritis. Defendant produced no affidavit or allegation of pleading contrary to this date. Lastly, the date when disability arose is of import. That is, was it prior to the effective date of the policy of June 1, 1967, during the 12-month period from June 1, 1967, to June 1, 1968, or after June 1, 1968? The affidavit of Dr. Thomas states that continuous and total disability occurred from April 14, 1967, through December 6, 1967, and that plaintiff was still totally disabled on that date. The affidavit of Dr. J. Thomas Aye, an orthopedic surgeon in the City of Sharon, Pa., filed by plaintiff, states that plaintiff was continuously and totally disabled from March 1, 1968, through June 21, 1970, being the date of the last visit. Dr. Aye's affidavit does not attempt to say

whether the disability arose on March 1, 1968, or when it arose or when it ceased, if at all.

With these dates in mind, the court is required to construe the following section of the policy:

" 'Sickness' whenever used in the policy means sickness or disease resulting in disability covered by the policy and which disability commences while the policy is in force as to the insured mortgagor; provided, however, disability resulting from sickness or disease for which the insured mortgagor received treatment or a recommendation for treatment by a legally qualified doctor of medicine or osteopathy during the twelve-month period immediately prior to the effective date of coverage as to the insured mortgagor shall not be covered thereunder until the policy has been in force as to the insured mortgagor for twelve consecutive months. After the policy has been in force for twelve consecutive months as to the insured mortgagor, disability commencing thereafter and resulting from sickness for which treatment was rendered or recommended during the twelve-month period immediately preceding the effective date of coverage as to such insured mortgagor shall be covered thereunder."

Defendant conceded that coverage is provided by the policy above in three instances. One, where both sickness and disability was after June 1, 1967, being the effective date of the policy. Two, where the insured received treatment or a recommendation for treatment over 12 months prior to the effective date of the policy and where disability commences after the effective date of the policy. Three, where the insured received treatment or a recommendation for treatment during the 12-month period immediately prior to the effective date of the policy and where disability commences after the policy has been in force

for 12 consecutive months. It claims, however, that in this fourth factual situation there is no coverage where the insured received treatment or a recommendation for treatment during the 12-month period immediately prior to the effective date of the policy and where the disability commences during the first 12 months that the policy is in force.[1] Defendant, therefore, concludes that plaintiff is excluded from coverage for two reasons. One, the disability arises from the illness for which treatment was received, incurred within the 12-month period prior to the effective date of the policy; and two, if the disability is deemed to have occurred within the 12-month period after the effective date of the policy, there is no coverage. We must deny defendant's position as to both contentions.

I. Has it been established that plaintiff's disability commenced prior to the effective date of the policy?

Pennsylvania Rule of Civil Procedure 1035 provides that after the pleadings are closed, when either party moves for a summary judgment, supporting and opposing affidavits shall be made on personal knowledge and shall set forth such facts as would be admissible in evidence. When such an affidavit is made, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response by affidavit or otherwise, as provided in these rules, must set forth specific facts showing there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Affidavits must be precise and clear to support a summary judgment: Kotwasinski v. Rasner, 436 Pa. 32, 258 A. 2d 865 (1969). If the affidavits are incon-

---

[1] A fifth factual situation arises under the facts of the case, as contended by defendant. That is where the sickness and disability both arise within the 12-month period immediately prior to June 1, 1967.

clusive, the matter will be remanded by an appellate court for further proceedings: McFadden v. American Oil Company, 215 Pa. Superior Ct. 44, 257 A. 2d 283 (1969). If there is a disputed factual issue, a summary judgment will not be entered: Hall v. Collier, 31 Fayette 46 (1968).

The affidavit of Dr. John L. Thomas is crystal clear that the sickness and disability as defined in the policy occurred on April 14, 1967, which was, of course, prior to the effective date of the policy of June 1, 1967. The affidavit of Dr. J. Thomas Aye concludes that plaintiff has been "continually and totally disabled from March 1, 1968." This affidavit leaves open the question as to whether in Dr. Aye's professional opinion March 1, 1968, was the beginning of the disability. The affidavit is not specifically precise and clear to make a determination on a motion for summary judgment.

This court is not in agreement with the contention of defendant that there can be no coverage if the sickness arose during the 12-month period immediately prior to the effective date of the coverage. Rather, we adopt the position of plaintiff that coverage is provided but no payment is required until the expiration of one year after the effective date of the policy. We find that it makes no difference whether the disability arose before or after June 1, 1967. Therefore, under either situation, No. 4 or No. 5 as outlined previously in this opinion, coverage is extended.

We interpret this policy to provide coverage where the insured has received treatment or a recommendation for treatment during the 12-month period immediately prior to the effective date of the policy, but the insured cannot collect upon the policy for any disability within the first 12 months of the effective date of the policy. He can collect after the policy has been in force for 12 months. We hold that when the

policy has been in force for 12 months, the insured can recover for disability commencing prior or thereafter and resulting from sickness for which treatment was rendered or recommended during the 12-month period immediately preceding the effective date of coverage.

In interpreting this policy, this court has used certain well-established rules of construction. One, a liberal construction should be given disability clauses in health insurance policies.[2]

Second, courts in construing accident clauses should not raise doubts where none exist.[3]

Third, where an insurance policy can be reasonably construed just as written and without any change, addition or elimination, the court may not add anything to it or give it a construction that renders any part of it useless or unnecessary.[4]

Fourth, the usual definition of words employed in a contract must control in the absence of a clear expression of contrary intention.[5]

Fifth, courts must reasonably interpret and liberally construe a policy in favor of an insured and give meaning to each word of a policy if possible.[6]

---

[2] Thompson v. Citizens Casualty Company, 94 Pa. Superior Ct. 303 (1928).

[3] Westbrook v. Continental Life Insurance Co., 111 Pa. Superior Ct. 563, 170 Atl. 395 (1934); Burdsall v. Mutual of Omaha Insurance Company, 207 Pa. Superior Ct. 228, 217 A. 2d 789 (1966).

[4] Quigley v. Western and Southern Life Insurance Co., 136 Pa. Superior Ct. 27, 7 A. 2d 70 (1939).

[5] Morris v. American Liability and Surety Co., 322 Pa. 91, 185 Atl. 201 (1936); Topkis v. Rosenzweig, 333 Pa. 529, 5 A. 2d 100 (1939).

[6] Safran v. Mutual Insurance Company of New York, 210 Pa. Superior Ct. 408, 234 A. 2d 1 (1967); Skelly v. Fidelity and Casualty Company of New York, 313 Pa. 202, 169 Atl. 78 (1933). Sack v. Glens Falls Ins. Co., 356 Pa. 487, 52 A. 2d 173 (1947).

And sixth, insurance policies must be strictly construed against the party who has written them, but words in a policy must be given reasonable and normal interpretation.[7]

So viewing the terms of this policy, we are of the opinion that the meaning of the definition of "sickness" is clear and unambiguous. As such, we cannot rule that plaintiff must be turned out of court.

Wherefore, the motion for summary judgment is denied.

## ORDER

And now, January 13, 1971, the motion for summary judgment is denied.

[7] Great American Insurance Company v. State Farm Mutual Automobile Insurance Company, 412 Pa. 538, 194 A. 2d 903 (1963); Lovering v. Erie Indemnity Company, 412 Pa. 551, 195 A. 2d 365 (1963).