

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Joe Kunschik
Commissioner, Bureau of Labor Statistics
Austin, Texas

Dear Mr. Kunschik:

Opinion No. 0-1216
Re: Should the general prevail-
ing rate of per diem wages
be ascertained and paid for
painting the bridge described?

We are in receipt of your letter of August 11,
1939, in which you request our opinion in respect to the
following situation:

"Your opinion is respectfully requested
with reference to Article 5159a, R. C. S., Pre-
vailing Wage Law, Acts 1933, 43rd Leg., p. 91,
ch. 45, on the following state of facts:

"A city owning and exclusively controlling
a bridge across a river within the corporate
limits of said city desires to let a contract
to have the old paint removed and new paint ap-
plied to said bridge, which bridge is not a
part of the State highway system. City employes
will not do the work, but the contractor will
hire employes to perform the work.

"Should the general prevailing rate of per
diem wages be ascertained and paid on such work?

"Does the phrase, 'exclusive of maintenance
work,' in the first sentence of section 1 of
said law exempt such work from the Prevailing
Wage Law, when said work is done under contract?"

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Section 1 of Article 5159a, Vernon's Annotated Civil Statutes, reads as follows:

"Not less than the general prevailing rate of per diem wages for work of a similar character in the locality in which the work is performed, and not less than the general prevailing rate of per diem wages for legal holiday and overtime work, shall be paid to all laborers, workmen and mechanics employed by or on behalf of the State of Texas, or by or on behalf of any county, city and county, city, town, district or other political subdivision of the State, engaged in <u>the construction of public works, exclusive of maintenance work.</u> Laborers, workmen, and mechanics employed by contractors or subcontractors in the execution of any contract or contracts for public works with the State, or any officer or public body thereof, or in the execution of any contract or contracts for public works, with any county, city and county, city, town, district or other political subdivision of this State, or any officer or public body thereof, shall be deemed to be employed upon public works." (underscoring ours)

Maintenance work is expressly exempt from the general prevailing wage requirement of the statute. The language above quoted is clear and explicit to this effect, and there can be no doubt as to this exception.

Nor is there any doubt that the removal of a coat of old paint from a previously constructed city bridge and the repainting of same come within the category of "maintenance work," as those words are used in Section 1 of Article 5159a, above quoted.

Words and Phrases, First Series, Vol 5, contains the following discussion of the word "maintenance" on page 4282:

"The 'maintenance' of a street within the meaning of an ordinance providing for the reconstruction and maintenance of a street for a period of years under one contract practically has the same meaning as the word 'repair,' and therefore an ordinance in requiring adjoining

Honorable Joe Kunschik, Page 3

owners to pay for the construction and mainten-
ance of a street is in violation of St. Louis Char-
ter, art. 6, § 18, providing that the repairs of
all streets shall be paid by the city. The word
'maintain' does not mean to provide or construct,
but means to keep up, to keep from change, to
preserve (Worcest. Dict.); to hold or keep in
any particular state or condition, to keep up
(Webst. Dict.). In Boon v. Dunden, 2 Exch. 21,
it was said the verb 'to maintain' signified to
support what has already been brought into ex-
istence. 'To repair' means to restore to a sound
or good state after decay, injury, dilapidation,
or partial destruction. Barber Asphalt Pav.Co.
v. Hexel, 56 S. W. 449, 451, 155 Mo. 391, 48 L.
R. A. 285."

The following definition of "maintenance" is given
in the case of San Francisco & P. S. S. Co. v. Scott, 253
Fed. 854:

"* * * Now, the operation of a business
or property includes payment for labor and mat-
erials which go into the actual operation there-
of, while maintenance means the upkeep or pre-
serving the condition of the property to be op-
erated, and therefore, in my judgment, includes
the cost of ordinary repairs necessary and prop-
er from time to time for that purpose. * * *"
(underscoring ours)

Words and Phrases, Fourth Series, Vol 2, under
"maintenance", on page 612 refers to "maintenance" as fol-
lows:

"In the absence of any showing that word
'repairs' has a restricted meaning, in trade
and commerce, it includes 'maintenance paint-
ing' of a ship, since the words 'maintain' and
'maintenance' are frequently used in the sense
of keeping a thing in good condition by means
of repairs. E. E. Kelly & Co., v. U. S., 17
C. C. P. A. 30, 32."

Finally, the fact that the paint job is being
done for a city under contract by laborers and workmen
employed and paid by contractors, or by subcontractors
is immaterial to this question. According to the express

Honorable Joe Kunschik, Page 4

wording of the statute, such employees are deemed employed upon public works when the contract for public works is with the State, county, city, or political subdivisions thereof, and payment is out of public funds. In the present instance, however, "maintenance" not "construction" work is being contemplated. Such work does not legally require the prevailing wage scale.

Trusting that we have fully answered the inquiries contained in your letter, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By        Dick Stout
            Dick Stout
            Assistant

APPROVED AUG 22, 1939
DS:LM

FIRST ASSISTANT
ATTORNEY GENERAL


APPROVED
OPINION
COMMITTEE
BY ___
CHAIRMAN