**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Petitioner,**

v.

**PAN AMERICAN INSURANCE COM-PANY, Respondent.**

No. B–1184.

Supreme Court of Texas.

Feb. 12, 1969.

Albert Smith, Lubbock, for petitioner.

Key, Carr, Carr & Clark, Donald M. Hunt, Lubbock, for respondent.

STEAKLEY, Justice.

State Farm Mutual Automobile Insurance Company, Petitioner here and defendant below, was at the time in question the general automobile liability insurance carrier of Lester C. Liggett. The policy cov-

ered an automobile that had been converted into a pickup vehicle using butane gas. Pan American Insurance Company, Respondent here and plaintiff below, was the general liability insurance carrier for Western Service and Supply, a company that was engaged in the butane gas business. A fire occurred while the Liggett vehicle was being refueled by an employee of Western on the premises and from the facilities of Western. Liggett and his wife sued Western for personal injuries sustained by them in the fire, and for property damage to the vehicle. They alleged various acts of negligence against Western. Pan American called on State Farm to defend the suit. State Farm refused to do so. Pan American settled with the Liggetts for the sum of $6,000. Thereafter Western instituted this suit, in which Pan American intervened and became the real party at interest against State Farm to recover the settlement sum, together with attorney's fees and adjustor's expenses in the sum of $3,487.39. Pan American asserted that Western was an additional insured under the omnibus clause of the State Farm policy issued to Liggett, and that State Farm was under a contractual duty to defend Western in the Liggett suit, and to pay the damages that Pan American paid Liggett in settlement of the suit, together with the expenses of the litigation. Both parties moved for summary judgment, and the motion of Pan American asserting the liability of State Farm as a matter of law was granted by the trial court. Thereafter, in a jury trial to ascertain the amount of damages, the jury found that the settlement with the Liggetts was reasonable, and that the expenses of litigation of $3,487.39 were reasonable and necessary. Judgment in favor of Pan American against State Farm in the sum of $9,487.39 was rendered accordingly. The Court of Civil Appeals affirmed. 431 S.W.2d 765. We have concluded that Western was not an additional insured under the omnibus clause of the State Farm policy of insurance covering the Liggett vehicle.

State Farm, in Part I of its insurance contract with Liggett, agreed:

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

A. bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury', sustained by any person;

B. injury to or destruction of property, including loss of use thereof, hereinafter called 'property damage';

*arising out of the ownership, maintenance or use* of the owned automobile or any non-owned automobile, and the company shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; but the company may make such investigation and settlement of any claim or suit as it deems expedient." (Italics added)

The contract further provided that "The following are insureds under Part I:

(a) with respect to the owned automobile,

(1) the named insured and any resident of the same household,

(2) any other person *using* such automobile with the permission of the named insured, providing his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission. * * " (Italics added)

Under the heading of "Definitions Under Part I" of the policy, it was provided that " 'use' of an automobile includes the loading and unloading thereof."

It should first be understood that the insurance policy issued to Liggett by State Farm was designed to protect Liggett against all sums he might become obligated

to pay as damages arising out of the ownership, maintenance and use of the motor vehicle. The contract did not insure Liggett for accidental personal injuries or property damage suffered by him or his wife. Here it is Liggett, the named and primary insured, who has been damaged and it is he, together with his wife, who sued to impose liability on Western, a third party and stranger to Liggett's contract with State Farm, whose only connection with the covered vehicle was for refueling purposes. Acts of negligence were charged against Western only, and liability of Liggett to pay damages was not involved. Nevertheless, Pan American, whose primary insured is Western, is seeking to impose liability on State Farm to pay sums that Western became obligated to pay because of personal injuries and property damage suffered by the Liggetts at the hands of Western.[1] The contention is that State Farm has primary coverage of Western, and the theory advanced is that Western was "using" the Liggett vehicle in the refueling operation and hence became an omnibus insured in favor of Liggett, the named insured.

The problem is one of ascertaining the intent of the parties in the insurance contract. The initial and, we have concluded, the determining questions, are, first, did the parties intend to remove acts of maintaining the covered vehicle from the reach of the omnibus clause by use of the term "maintenance" in the insuring clause and its omission from the more narrowly stated omnibus clause?; and, if so, was Western engaged in an act of maintaining the vehicle in the refueling operation? We answer in the affirmative to each question.

▪ In Hardware Dealers Mutual Ins. Co. v. Berglund, 393 S.W.2d 309 (Tex.Sup.

1965), we stated the following as the applicable rule in construing insurance contracts:

"The language used in the policies 'must be construed according to the evident intent of the parties, *to be derived from the words used,* the subject-matter to which they relate, and the matters naturally or usually incident thereto,' and it is only when 'the words admit of two constructions, that one will be adopted most favorable to the insured.' Brown v. Palatine Insurance Company, 89 Tex. 590, 35 S.W. 1060 (1896). See 13 Tex.Jur. 2d 287, Contracts, § 122."

Previously, in Royal Indemnity Company v. Marshall, 388 S.W.2d 176 (Tex.Sup. 1965), we wrote:

"Plaintiff contends that insurance contracts are to be strictly construed in favor of the insured and against the insurer. This rule applies in cases where the policy uses terms of doubtful meaning or where the language of the contract *is* ambiguous. This general rule does not affect another general rule of construction of all contracts, to-wit: that all parts of a contract are to be taken together, and that such meaning shall be given thereto as will carry out and effectuate to the fullest extent the intention of the parties. United American Insurance Co. v. Selby, 161 Tex. 162, 338 S.W.2d 160, 1st col. 164, [84 A.L.R. 2d 367] (1960); Pan American Life Insurance Co. v. Andrews, 161 Tex. 391, 340 S.W.2d 787(1), [93 A.L.R.2d 560] (1960); 32 Tex.Jur.2d 102, Ins. Sec. 54 and authorities therein cited."

▪ The intent of the parties to restrict noncontracting persons as omnibus insureds, and hence to narrow the liability

1. Cases in other jurisdictions are in disagreement upon the question of whether the named insured under an automobile liability insurance policy is precluded by the fact that he is a named insured from recovering on such policy when an additional insured, while operating, maintaining or using the vehicle within the terms of the policy, inflicts personal injury, death, or other loss upon him. See Annot., 15 A.L.R.3d 711 (1967). The question is open in Texas and is not decided here.

coverage of the policy, is clearly indicated by the terms of the omnibus clause when considered in the light of the broadly stated insuring clause. The general liability coverage of Liggett, the named insured, is written in terms of damages "arising out of the ownership, maintenance or use of the" vehicle. The words "ownership", "maintenance" and "use" are distinctly descriptive of particular relationships to the vehicle. The omnibus clause, on the other hand, extending coverage to strangers to the contract, is drawn in terms of "any other person using such automobile." The conspicuous omission of the term "maintenance" denotes an intent to exclude persons whose only connection with the vehicle is for purposes of maintenance. The term "use" is the general catchall of the insuring clause, designed and construed to include all proper uses of the vehicle not falling within other terms of definition such as ownership and maintenance. Appleman, Insurance Law and Practice, Volume 7, § 4316(e). It was stated by the Supreme Court of Pennsylvania that maintenance "covers all acts which come within its ordinary scope and meaning," and, further, that "To 'maintain' means to preserve or keep in an existing state or condition and embraces acts of repair and other acts to prevent a decline, lapse, or cessation from that state or condition." Morris v. American Liability & Surety Co., 322 Pa. 91, 185 A. 201, 202 (1936). Compare Automatic Fire Alarm Co. v. Bowles, 143 F.2d 602 (Emer.Ct.App.1944), where in another context it was recognized that maintenance doubtless includes the idea of keeping in repair, but has a much broader meaning involving the concept of supporting, sustaining, carrying on and continuing. It appears inescapable that the replacement of fuel which has been exhausted with use and without which a motor vehicle is inoperative, is a species of maintenance in the same sense as repairing the carburetor as a part of the fuel system, or inflating a flat tire, or changing the oil in the crankcase of the engine. The only purpose of the act of refueling by Western was to capacitate the Liggett vehicle to perform its transportation functions. This act, standing alone, constituted "maintenance" of the vehicle and was a distinct relationship expressly included within the terms of the insuring clause but excluded, by its omission, from the coverage of the omnibus clause. The contemplation and intent of the parties to the insurance contract are thus shown and we hold that Western was not an omnibus insured under the State Farm policy.

As stated earlier, both parties moved for summary judgment and that of Pan American was sustained by the trial court and this action was affirmed by the Court of Civil Appeals. State Farm has properly preserved its point that the trial court erred in overruling its motion, and we agree. We therefore reverse the judgments below and render judgment that Respondent take nothing by its suit. See Tobin v. Garcia, 159 Tex. 58, 316 S.W.2d 396 (Tex.Sup. 1958).

McGEE, J., not sitting.

WALKER, Justice (concurring).

I concur in the judgment of the Court, but do not agree with the reasons given for its decision. There is always danger of writing bad law in these controversies between two insurance companies where it is clear that one or both is liable. It seems to me that in this instance the Court goes out of its way to restrict the meaning of the term "using" in the policy definition of an additional insured. The purpose of the omnibus clause is to extend to third persons the same protection that is afforded the named insured when making a similar "use" of the vehicle, except as the coverage may be affected by exclusions or limitations found elsewhere in the policy. It should be given a liberal construction that will accomplish this purpose. Let us assume that someone is injured as a result of negligence of a son in filling the tank of his father's automobile while the vehicle

is in the garage at the father's home. The son resides in a different household. His filling the tank is not related in any way to his driving the vehicle but is done simply as a courtesy to and with the permission of his father, the named insured. As the majority construes the policy here, it will afford no protection to the son. In my opinion this is not in accordance with the intention of the parties to the insurance contract.

State Farm's policy specifically provides that "use" of the automobile includes the loading and unloading thereof. For the purpose of determining coverage and the persons insured, I fail to see any material difference between loading one tank on a truck with butane in order that the same may be transported to a different location and filling another tank on the truck with the same fuel to provide energy for its operation. Entirely aside from the "loading and unloading" clause, moreover, I agree with the Court of Appeals for the Fifth Circuit that "fueling the truck for the journey was just as much a 'use' of it as making the journey would be." Red Ball Motor Freight Co., Inc. v. Employers Mut. Liability Ins. Co., 5th Cir., 189 F.2d 374. I agree with the Court of Civil Appeals, therefore, that Western is an additional insured under the State Farm policy.

State Farm also relies on the provision excluding "an owned automobile while used by any person while such person is employed or otherwise engaged in the automobile business." It is unnecessary to determine the exact meaning and effect of that exclusion here, because in my opinion and for the reasons set out below Pan American is not entitled to recover even if State Farm's policy did protect Western. The exclusion, unlike the definition of an additional insured, should be given a strict construction, and I am inclined to the view that it applies only while the vehicle is used exclusively by a person employed or otherwise engaged in the automobile business. I have not investigated the question, however, and simply assume that the exclusion does not deprive Western of coverage under the State Farm policy.

Although not mentioned by the majority, the comprehensive liability policy issued by Pan American to Western had a fleet endorsement covering the tank truck from which butane was being transferred into the Liggett vehicle. This policy also provided that "use of an automobile includes the loading and unloading thereof," and contained substantially the same pro rata and excess provisions as the State Farm policy. The Court of Civil Appeals held that State Farm was primarily liable for the settlement and expenses, and that the Pan American policy afforded excess coverage. On the basis of the assumption mentioned above, I agree that State Farm is primarily liable since the accident arose out of the use of the Liggett vehicle, but it is my opinion that Pan American's coverage is also primary and not excess in view of the fact that the accident also arose out of the use of the truck covered by its policy. Since the two companies were each liable for a pro rata share of the loss, the case is governed by the rule that the company which pays more than its proportionate part cannot recover the excess from the other insurer. Traders & General Ins. Co. v. Hicks Rubber Co., 140 Tex. 586, 169 S.W.2d 142. I agree with the majority, therefore, that Pan American should take nothing by this suit.

POPE, J., joins in this concurring opinion.